**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CARRIE HART,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action File No:** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **GAYCO INC.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff Carrie Hart ("Hart" or "Plaintiff") brings this action for relief and damages against Defendant Gayco Inc. ("Gayco" or "Defendant") based on the following allegations and causes of action.

## NATURE OF THE ACTION

1.      This action to correct unlawful employment discrimination arises under Title VII of the Civil Rights Act  of 1964 ("Title VII") as amended, 42 U.S.C.A. § 2000e-3(a); the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et. seq.*; and the Americans with Disabilities Act of 1990 ("ADA"), as

amended, 42 U.S.C.A. § 12101, *et seq.* Plaintiff Hart alleges that Gayco subjected her to a hostile work environment in retaliation for her internal complaint of sex-based harassment against a senior-level company official and because she suffered from ADA-qualifying disabilities. Hart disclosed to Gayco her impairments—i.e., anxiety and a post-traumatic stress disorder ("PTSD") that arose from a nonwork-related sexual assault—which were exacerbated by her mistreatment at Gayco. The company failed to accommodate her request for leave or reassignment and ultimately terminated her because of her impairments. Hart brings an additional claim for interference under the FMLA on the grounds that Gayco's failure to notify Hart of her rights to take FMLA leave led to her being denied leave to which she was lawfully entitled and which would have protected her from termination. Hart seeks economic damages of back pay, front pay, and lost benefits. Additionally, Hart seeks non economic compensatory damages, punitive damages, as well as her attorneys' fees and costs of litigation. Hart also petitions the court for injunctive and declaratory relief as appropriate.

## THE PARTIES

2.     Hart is an individual and a resident of the State of Georgia and during the time of the events alleged in this complaint, she was employed by Gayco as a pharmacist at one of their Georgia locations.

3.     Hart has a record of ADA-qualifying medical disabilities that cause her to be substantially limited in one or more major life activities.

4.     Hart is an eligible employee within the meaning of the FMLA.  She had been employed by Gayco for more than 12 months and worked more than 1,250 hours in the 12 months preceding the health conditions for which she was entitled to receive leave.  29 U.S.C.A. § 2611(2)(a)(i)-(ii).

5.     Gayco is a Georgia-based pharmacy company that exclusively services long-term care facilities.  The company maintains active offices and operations in both Alpharetta and Dublin Georgia

6.     Gayco is an employer engaged in commerce and has employed more than 50 persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year

7.     Gayco is an employer as defined by the FMLA. 29 U.S.C.A. § 2611(4)(A)(i).

## PERSONAL JURISDICTION

8.    Gayco may be served with process through its registered agent on record with the Georgia Secretary of State: J. Bent Gay,  507 Industrial Blvd., Dublin, GA 31021.

## SUBJECT MATTER JURISDICTION AND VENUE

9.    Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§1331 and 1343.

10.    Venue is proper in this district and division under 28 U.S.C.A. §1391(b)(1), as Defendant resides in and conducts business in this district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    Hart filed a charge of sex- and disability-based discrimination against Gayco with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2021-00014, on November 2, 2020.  A copy is attached as Exhibit A.

12.    Hart subsequently received a right-to-sue letter from the EEOC on September 29, 2021.  A copy is attached as Exhibit B.

4

13.     Hart timely files this action within 90 days of her receiving a right-to-sue letter.

14.     All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

15.     Hart began employment with Gayco in April 2019, working as a pharmacist in its Dublin, Georgia office.

16.     During August 2019, Hart was the victim of a nonwork-related sexual assault and filed criminal charges with local law enforcement authorities.  She disclosed the event to her immediate supervisor chief pharmacist Autumn Allen because Hart understood that her cooperation with the ongoing police investigation might sometimes require her to miss work or shift her schedule.

17.     Hart was diagnosed by a psychologist in September 2019 with anxiety and PTSD stemming from the assault.  Her condition did not initially impair or limit her ability to function effectively in her job, and Hart continued to receive positive evaluations and feedback over her first eight months at Gayco.

18.    In late October 2019, Hart attended a Gayco office Halloween party dressed as the character Queen Cersi in a popular series on HBO, "Game of Thrones."  Hart's costume was a full-length dress that was in no way revealing or provocative.

19.    Jon Martin, the chief operations officer for Gayco, approached Hart at the party and remarked to her that "[y]ou should have come as Cersi in the Walk of Shame scene."   In "Game of Thrones" mythology, Cersi was eventually imprisoned for an illicit sexual relationship and forced to walk completely naked in front of a jeering crowd of onlookers.  This scene's brutal depiction of sexual cruelty is often referred to by viewers of the series as "Cerci's Walk of Shame."

20.    Hart was stunned and deeply humiliated by Martin's comment, which to her had a double offensive meaning.  In addition to being a crude implication that Martin wanted to see Hart nude, the direct allusion to the Walk of Shame did not seem coincidental to Hart.  She took it as a veiled implication that Martin might have learned she was a victim of sexual violence and meant to convey that she should feel ashamed.

21. Hart immediately told Martin that his comment was offensive and degrading.  Within days, she reported it to Autumn Allen.

22.    In mid-November, within weeks of Hart's reporting her disturbing encounter with Martin, he abruptly summoned her to his office with an insulting and loud order from him to "get your butt in here," which was heard by multiple coworkers.

23.    When Hart entered Martin's office, he inundated her with verbally abusive accusations that she was incompetent and had been inadequately trained. When she sought to answer his concerns, which seemed to arise out of a routine delay in the filling of an order to a client facility, Hart was told to "stop talking." During this tirade, Hart was visibly shaking, yet Martin continued his bullying unabated.

24.    Hart reported Martin's conduct directly to the CEO of Gayco, Bent Gay, describing both Martin's abusive behavior and his Walk of Shame reference. Gay sought to minimize Martin's action on the grounds that Martin "was under a lot of stress."

25.    When Hart made it clear to Gay that Martin's treatment made her feel threatened and unsafe in his presence, Gay took one modest step, moving Martin to an office farther away from hers.  But Martin remained in constant contact with Hart, including in morning staff meetings.  Martin, whose dealings with Hart

during her first seven months on the job were uneventful, started finding constant fault with her work, which he would often question in front of other pharmacists. Over the next several months, Martin made statements that were unmistakably aimed at her, including a comment in a staff meeting that certain employees were wasting the CEO's time by taking office complaints to him and that he had been moved to a different office suite because of "one comment that someone evidently didn't like."

26.    Hart felt that Martin began to actively undermine her.  In early 2020, Autumn Allen told her that Martin was starting to ask questions about Hart's productivity and her job performance.  When the COVID-19 pandemic started, Hart was one of the employees directed to continue to report to the office, while a number of her peers at the company were permitted to work remotely.  During the spring, her schedule was arbitrarily changed to limit her time for breaks and to prevent her from being at work during staff meetings where pharmacists received critical information about new COVID-19 protocols and general operational details.  Hart was told that Martin controlled the employees' schedule and ultimate job assignments.

27.    Hart shared with Autumn Allen that Martin's conduct was disruptive to her and that it was contributing to her stress and anxiety.  Allen's response was that Hart should tread carefully because Martin had close ties to the CEO.  Hart made requests to be transferred to Alpharetta or to transition to remote work so that she could avoid Martin, but her requests were denied.

28.    In mid-April 2020, Hart reported to Allen that she had begun receiving therapy and required time off to deal with her escalating stress and anxiety.  Hart manifested classic medically recognized signs of PTSD, including intense fear of encounters with Martin, diminished concentration, sleep loss, bouts of anxiety during the workday, and heightened reactions to triggers, including Martin's persistent presence at the Dublin office.  These symptoms resembled Hart's traumatic reactions to her sexual assault in the summer of 2019.

29.    Gayco and its benefits representatives informed Hart in mid-April 2020 that she "did not yet qualify" for FMLA eligibility, but in early May, they informed Hart that she would be placed on a temporary disability leave under a company plan administered by MetLife.

30.    Based on the representation made to her that she had been approved for short-term disability leave, Hart took off three weeks and did not continue to

pursue FMLA leave.   In fact, Hart became an FMLA-qualified employee in or about the very time her disability leave began.   Gayco never informed her of her status, despite the HR department's comprehensive knowledge of the FMLA and its obligations.

31.    During Hart's time off, Gayco representatives interrupted her repeatedly with questions about her timetable for return and with insinuations that her absence was causing disruption of the pharmacy team.   Hart also learned from her health care providers that Gayco officials had contacted them to "verify" her condition.

32.    Hart returned to work on a medically recommended part-time basis in late May 2020.   Hart was told by HR officials that some problem with her disability approval had emerged and that there was inadequate documentation of her condition.   Keri Hood, the senior personnel officer at the company, informed Hart that to authenticate her disability leave, she needed to submit an actual copy of the police report related to her sexual assault.   When Hart expressed her discomfort with the request, Hood ordered Hart to electronically request the report from a company computer in Hood's presence.

33.     Hart soon learned from her disability contact at MetLife that Hood's demand that Hart produce a police report was a violation of the disability plan and was actually unlawful.

34.     After Hart returned to work, she continued to experience bouts of extreme anxiety that interfered with her concentration and her abilities to interact with colleagues. Hart informed Autumn Allen of her continuing health challenges.

35.     Rather than revisit Hart's requests for reasonable accommodations in the form of remote work or a transfer to Alpharetta, Allen responded by telling Hart that the company was entering a busy stretch, that her PTSD was comparable to a mother returning from childbirth, and that she needed to "push" to make it through her difficulties.

36.     As Hart made it clear that part time status was not resolving her mental health condition, she was never informed of her eligibility for FMLA and was erroneously told that her only option was to return to disability for another limited stint, which she did in early June 2020.

37.     At one point, after returning to full disability during June 2020, Hart learned that a Gayco representative messaged some of her family members on social media inquiring about Hart's whereabouts, a blatant intrusion on her privacy.

38.    On June 23, 2020, Hart received a return-to-work notice from Kerri Hood, although Hart had not been medically cleared by her health care providers to return to work and could not have done so without jeopardizing her mental health. On or about June 24, 2020, Hart was terminated on the grounds that she had "abandoned her job" by not returning to work as ordered.

39.    Hart was an FMLA-eligible employee at the time of her termination. Gayco failed to apprise her of her rights under the FMLA and never provided her FMLA certification paperwork despite having direct knowledge of Hart's recurring struggles with anxiety and PTSD, which are both FMLA qualifying conditions.

40.    During the spring of 2020, Hart could have performed her essential job duties by transferring to Gayco's Alpharetta pharmacy or by working remotely, as various other Gayco pharmacists were allowed to do.  Hart sought out both accommodations, and her requests were denied.

41.    Upon information and belief, Jon Martin exerted influence over all termination decisions at Gayco, including Hart's, and was in position to direct her termination as retaliation for her complaints about his abusive conduct toward her.

## COUNT I
### (Retaliation in violation of Title VII )

42.     Hart incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

43.     Hart engaged in protected activity in the form of an internal complaint of sex-related harassment by a higher-level management official at Gayco.

44.     Gayco retaliated against Hart for engaging in protected activity by subjecting her to materially adverse job actions that well might have dissuaded Hart from making or supporting a charge of discrimination, including but not limited to verbally abusive behavior by a higher-level management official, unwarranted criticism and scrutiny of her job performance, alterations to her schedule that made her job more burdensome and more difficult to perform, and her eventual termination in violation of 42 U.S.C.A. § 2000e-3(a).

45.     As a result of Gayco's retaliatory conduct, Hart has suffered monetary damages including but not limited to back pay and front pay; loss of benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

46.     Higher-level management officials at Gayco acted with malice or reckless indifference to Hart's federally protected rights under Title VII, and she is therefore entitled to recover punitive damages.

## COUNT II

### (Discrimination/failure to accommodate under the ADA)

47.    Hart incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

48.    Gayco is subject to the requirements of the ADA.

49.    At all times relevant, Hart was an individual with a record of disabilities—anxiety and PTSD—that are recognized as ADA-qualifying medical conditions, 42 U.S.C.A. § 12102 (1)(A)(B).

50.    Hart was regarded by Gayco as an individual with a disability as defined by the ADA.

51.    Hart's ADA-qualifying conditions substantially limited her in one or more major life activities.

52.    At the time of her termination, Hart was "qualified individual" as defined under the ADA because she was able to perform the essential functions of the job she held with a reasonable accommodation.

53.    Hart informed Gayco officials that she required either a reassignment or leave from work to alleviate the symptoms of her anxiety and PTSD.

54.     Gayco refused to grant Hart a reasonable accommodation or adequate leave and subjected her to discriminatory treatment by ultimately terminating her because of her disability, in violation of 42 U.S.C.A. § 12112(a).

55.     As a result of Gayco's disability-based discrimination, Hart has suffered monetary damages including but not limited to back pay and front pay; the loss of benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

56.     Higher-level management officials at Gayco acted with malice or reckless indifference to Hart's federally protected rights under the ADA, and she is therefore entitled to recover punitive damages.

## COUNT III
### (ADA hostile environment)

57.     Hart incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

58.     Hart is an individual with an ADA-qualifying disability.

59.     Hart experienced mistreatment based on her disabilities, anxiety and PTSD, that was severe or pervasive enough to alter the terms and conditions of her

employment and create a disability-based, discriminatorily abusive working
environment.

60.     As a result of Gayco's disability-based discrimination, Hart has
suffered monetary damages including but not limited to back pay and front pay; the
loss of benefits; and noneconomic damages including emotional distress,
humiliation, embarrassment, and mental anguish.

61.     Higher-level management officials at Gayco acted with malice or
reckless indifference to Hart's federally protected rights under the ADA, and she is
therefore entitled to recover punitive damages.

## COUNT IV
### (Interference with FMLA leave)

62.     Hart incorporates by reference all the preceding paragraphs of this
complaint as though set forth fully and separately herein.

63.     Hart was an eligible employee for an FMLA-defined employer and
had a serious health condition as defined by 29 U.S.C.A. § 2611(11) (B).

64.     Gayco interfered with Hart's FMLA rights by willfully failing to
provide her with FMLA certification paperwork, or to notify her of her rights under
the FMLA after being put on notice of her need for medical leave.

65.    Hart suffered harm from Gayco's interference in that she failed to receive FMLA leave time that would have protected her from termination or that would have enabled her to receive adequate care for her serious health conditions, anxiety and PTSD.

66.    As a result of Gayco's willful interference with her rights under the FMLA, Hart has been deprived of wages, health insurance, savings contributions, retirement benefits, and other benefits.

67.    Hart is entitled to equitable and monetary relief including back pay, front pay, reinstatement, attorneys' fees, and costs of litigation. 29 U.S.CA. § 2617(a)(1)(A)-(B).

68.    Hart is entitled to liquidated damages for Gayco's willful interference with her rights under the FMLA. 29 U.S.CA. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A.  Back pay, front pay, and lost benefits.

B.  Compensatory damages to the extent allowed by law.

C.  Punitive damages.

D. Liquidated damages.

E. Attorneys' fees and costs of litigation.

F. Pre-judgment and post-judgment interest at the highest lawful rate.

G. Such other equitable and monetary relief as the court deems just and proper, including reinstatement.

H. A declaratory judgment that Defendant's actions violated Plaintiff's rights under Title VII, the Americans with Disabilities Act, and the Family Medical Leave Act.

Respectfully submitted, the 14th day of December, 2021.

                              **HKM Employment Attorneys LLP**

                              *s/Artur Davis*
                              Artur Davis[1]
                              2024 3rd Ave. North Suite 307
                              Birmingham, AL 35203
                              Direct: 205-881-0935
                              adavis@hkm.com
                              Jermaine "Jay" Walker
                              GA Bar No. 142044
                              3355 Lenox Rd. NE Suite 705
                              Atlanta, GA 30326
                              jwalker@hkm.com
                              Direct: 404-301-4020

---

[1]Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Davis is licensed in the state of Alabama and the District of Columbia.